UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSAN RAE WARES,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security<br><br>　　　　　　　Defendant. | **Case No. 1:15-cv-01056-EPG**<br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

## I.   INTRODUCTION

Plaintiff Susan Rae Wares ("Plaintiff") seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner" or "Defendant") denying her applications for disability insurance and supplemental security income ("SSI") benefits pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted without oral argument to the Honorable Erica P. Grosjean, United States Magistrate Judge.[1]

## II.   BACKGROUND AND PRIOR PROCEEDINGS[2]

Plaintiff was 46 years old at the time of her hearing before the Social Security Administration. AR 47. She is 6'1" and weighs approximately 285 pounds. AR 47. She graduated from high school and beauty college and has completed a medical assistant program.

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (ECF Nos. 4, 5.)
[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

AR 48-49. Plaintiff most recently worked as a hairstylist in 2006. AR 370. She initially worked on a full-time basis, but later worked part-time because of her impairments. AR 370. Eventually, she took a medical leave of absence and never returned to work. AR 370. Plaintiff lives with her husband and is able to drive, although driving long distances can cause her pain. AR 55-56. Her daily activities include watching television, reading books, and socializing with friends and family. AR 56-58.

Plaintiff's alleged physical conditions are: fibromyalgia, meralgia paresthetica, thoracic radiculopathy, cervical radiculopathy, lumbar radiculopathy, chronic knee pain, chronic hip pain, chronic migraines, osteoarthritis, asthma, and drug/food allergies. AR 77. On April 5, 2011, Plaintiff filed applications for SSI under Title XVI and disability insurance benefits under Title II, alleging a disability beginning on June 1, 2006. AR 218-225, 226-227. The applications were denied initially on May 16, 2012 and on reconsideration on March 14, 2013. AR 151-155, 156-159, 162-166, 167-171. Plaintiff filed a request for a hearing on May 3, 2013. AR 172-174. The hearing was then conducted before Administrative Law Judge G. Ross Wheatley (the "ALJ") on November 4, 2013. AR 42. On December 16, 2013, the ALJ issued an unfavorable decision determining that Plaintiff was disabled beginning on March 7, 2013, rather than the alleged onset date of June 1, 2006. AR 21-34. As a result, Plaintiff was not disabled as of December 31, 2011, the last date for which she met the insured status requirements of the Social Security Act to claim disability insurance benefits. AR 34. Plaintiff filed an appeal of this decision with the Appeals Council. The Appeals Council denied the appeal, rendering the ALJ's order the final decision of the Commissioner. AR 1-6.

Plaintiff now challenges that decision, arguing that: (1) The ALJ erroneously found that Plaintiff's disability onset date was March 7, 2013, rather than the alleged onset date of June 1, 2006; (2) the ALJ incorrectly rejected Plaintiff's testimony; and, (3) the ALJ rejected the conclusions of treating physician Dr. Bruce Gesson.

Defendant contests Plaintiff's assessment, pointing out that: (1) The onset date of March 7, 2013 is supported by substantial evidence; (2) the ALJ appropriately discounted selected portions of Plaintiff's testimony that he found not credible; and, (3) the ALJ actually incorporated

portions of Dr. Gesson's opinion into the decision, but only did so where it was consistent with the evidence in the medical record.

### III. THE DISABILITY DETERMINATION PROCESS

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The ALJ must consider objective medical evidence and opinion testimony. 20 C.F.R. §§ 404.1527, 404.1529, 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically-determinable "severe" impairments,[3] (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work,[4] and (5) whether the claimant had the ability to perform other jobs

---

[3] "Severe" simply means that the impairment significantly limits the claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

[4] Residual functional capacity captures what a claimant "can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545 and 416.945. "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th Cir. 2007).

existing in significant numbers at the regional and national level. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f).

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff met the disability standard beginning on March 7, 2013. AR 21-34. In particular, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 1, 2006, the date specified in her application. AR 23. Beginning on June 1, 2006, the ALJ found that Plaintiff had the following severe impairments: fibromyalgia, degenerative disc disease with radiculopathy, disorders of the bilateral knees status post 2 surgeries on the right knee, hip disorder, meralgia paresthetica, asthma, and obesity. AR 23. Beginning on March 7, 2013, the Plaintiff had the same severe impairments, in addition to right shoulder disorder. AR 23. Nonetheless, the ALJ determined that the severity of Plaintiff's impairments did not meet or exceed any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 at any point after June 1, 2006. AR 25.

Based on a review of the entire record, the ALJ determined that before March 7, 2013, Plaintiff had the RFC to: "perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), but she can stand and walk for no more than 4 hours in an 8-hour workday and sit for no more than 6 hours in an 8-hour workday. She can never climb ladders, ropes, or scaffolds. She can only occasionally kneel, crouch, crawl, and climb ramps and stairs. She can only frequently balance and stoop. In addition, she must avoid concentrated exposure to extreme cold, pulmonary irritants (i.e. fumes, odors, dust, and gases), hazardous machinery, and unprotected heights." AR 25.

After March 7, 2013, Plaintiff had the RFC to: "perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), but that she requires the use of a cane or a crutch for all ambulation. She needs to be allowed to sit or stand alternatively at will, provided that she is not off-task more than 10% of the work period. She is limited to no more than occasional pushing and pulling with the right upper extremity. She can never crouch or climb ladders, ropes, or scaffolds. She can only occasionally balance, stoop, kneel, crawl, and climb ramps and stairs. She is limited to no more than frequent reaching and overhead reaching with the right upper extremity. She must avoid even moderate exposure [to] hazardous machinery and unprotected heights. She must

4

avoid concentrated exposure to extreme cold, extreme heat, and pulmonary irritants (i[.]e. fumes, odors, dust, and gases). Due to a combination of her medical conditions and associated pain, she would have 3 or more unexcused or unscheduled absences per month." AR 30.

Plaintiff was unable to perform her past relevant work at any point after June 1, 2006. AR 31. However, the ALJ determined that before March 7, 2013 there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including appointment clerk, office help, and assembler of small products. AR 32. After March 7, 2013, there were no jobs that exist in significant numbers in the national economy that Plaintiff could perform. AR 33

## IV.  STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether: (1) it is supported by substantial evidence; and (2) it applies the correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

"Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id*.

## V.  DISCUSSION

### A. The ALJ's Determination of March 7, 2013 as the Disability Onset Date

#### *i. Legal standard*

"For social security purposes, 'the critical date is the date of onset of disability, not the date of diagnosis.'" *Herrera v. Barnhart*, 379 F.Supp.2d 1103, 1107 (C.D. Cal. 2005), *quoting Swanson v. Sec. of Health & Human Servs.*, 763 F.2d 1061, 1065 (9th Cir. 1985). "The onset date of disability is the first day an individual is disabled as defined in the Act and the regulations." *Id.*, *quoting* Social Security Ruling ("SSR") 83-20.[5] "In determining the date of

---

[5] "Social Security rulings constitute the Social Security Administration's interpretations of the statute it administers and of its own regulations." *Chavez v. Dep't of Health & Human Servs.*, 103 F.3d 849, 851 (9th Cir. 1996). The Court thus "defer[s] to Social Security Rulings . . . unless they are plainly erroneous or inconsistent with the Act or

onset of disability, the date alleged by the individual should be used if it is consistent with all the evidence available . . . the established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence of record." *Armstrong v. Comm'r of Soc. Sec. Admin.*, 160 F.3d 587, 589 (9th Cir. 1998), *quoting* SSR 83-20.

### ii. Analysis

Plaintiff contends that the ALJ erred in finding that the onset date of Plaintiff's disability was March 7, 2013, rather than the alleged onset date of June 1, 2006. In particular, Plaintiff asserts that she was suffering from disabling symptoms, including pain in her shoulder, hip, and leg, long before March 7, 2013. Alternatively, Plaintiff argues that the medical record was ambiguous enough that the ALJ should have called a medical expert to determine a disability onset date. Finally, Plaintiff argues that the RFC for the period between June 1, 2006 and March 7, 2013 is not restrictive enough because it is contradicted by the opinion evidence of Plaintiff's treating physicians.

Defendant responds that, before March 7, 2013, medical providers offered inconsistent opinions about Plaintiff's impairments, including with respect to Plaintiff's need for crutches, her right shoulder pain, and her gait. After March 7, 2013, in contrast, medical providers had consistent findings about each of these impairments. Because the record supports this date, Defendant argues, the ALJ had no need to consult a medical expert. Moreover, the ALJ's RFC finding was supported by substantial evidence.

To explain why he found an onset date of March 7, 2013, the ALJ wrote that:

> The claimant's condition has worsened beginning on March 7, 2013. Since that date, she has been consistently observed to have an abnormal gait and use crutches for ambulation during physical examination. She also consistently demonstrated diminished ranges of motion in the lower extremities at physical examinations conducted since March 7, 2013. In addition, she started having right shoulder problems and was noted to have a decreased or painful range of motion in the right upper extremity during physical examinations held on May 14, 2013, June 25, 2013, and August 21, 2013.

AR 30 (internal citations omitted). Notably, this explanation discusses the consistency of these conditions *after* March 7, 2013, but does not expressly establish the inconsistency of these regulations." *Id.*

6

conditions *before* March 7, 2013. The ALJ also discusses the history of Plaintiff's right shoulder pain elsewhere in the decision (AR 24). The Court will thus examine the record with respect to Plaintiff's use of assistive devices in walking, leg pain, and right shoulder pain to determine whether the ALJ's analysis was consistent with the evidence.

### a. **Plaintiff's assistive devices.**

The earliest instance that Plaintiff contends that she consistently required an assistive device to walk is in December 2011.[6] (Plaintiff's Opening Brief 13:26-14:4, ECF No. 14.) On December 16, 2011, Plaintiff reported to Dr. Scott Walthour that she was experiencing left knee pain. AR 1561. She had recently had knee surgery and reported falling down when she had engaged in "twisting maneuvers." AR 1561. Dr. Walthour took x-rays, which showed that Plaintiff's knees were "within normal limits" and had "some mild degenerative changes." AR 1561. She walked with a "slow, but relatively nonantalgic gait." AR 1561. No reference to an assistive device was made in this visit.

At some follow up appointments after this point, Plaintiff was using an assistive device. For instance, on January 31, 2012, Dr. Bruce Gesson reported that Plaintiff "has to walk with a crutch." AR 621. Plaintiff also reported to Dr. Tiffany Gee on July 30, 2012 that she "always has to have her cane now." AR 380. In that same examination, however, Dr. Gee reported that Plaintiff had a normal gait and stance. AR 382. Dr. Gesson also refers to Plaintiff's use of cane/crutches in visits on, among other dates, September 4, 2012, October 24, 2012, and December 12, 2012. AR 558, 585, 3485.

On the other hand, there are also records during this period which make no note of any assistive devices. In a psychological consultative examination with Dr. Philip Cushman on February 11, 2013, for example, Plaintiff was observed wearing a brace on her right knee and "to walk with a slower than normal gait," but not to require any assistive device. AR 372. In contrast, a physical consultative examination on February 11, 2012 by Dr. Satish Sharma found

---

[6] Plaintiff also points to instances before December 2011 when she was using an assistive device, but she admits that "she did not consistently require a crutch in earlier records." (Plaintiff's Opening Brief 14:9-10, ECF No. 14.) This supports the ALJ's finding that Plaintiff was not consistently observed to require an assistive device to walk before March 7, 2013. Both parties agree that Plaintiff was consistently using crutches or a cane after March 7, 2013. (Defendant's Opposition Brief 8:14-15, ECF No. 15.)

that Plaintiff could "only walk with help of a crutch." AR 1547. In a checkup appointment with Dr. Tiffany Gee on November 26, 2012, Dr. Gee made no note of any assistive devices. AR 413-416. Notably, however, Dr. Gee appears to have focused her examination on Plaintiff's psychiatric symptoms and made no note about any of her extremities or ability to move. AR 416.

Although there are some inconsistencies in the record, Plaintiff does appear to have been consistently using assistive devices to walk for at least some part of 2012, although the record does not support Plaintiff's contention that she consistently required an assistive device as early as December 2011 and certainly does not support Plaintiff's alleged onset date of June 1, 2006.

### b. Plaintiff's leg pain/range of motion.

The evidence in Plaintiff's record with respect to her leg pain dates back to 2007. The further the record goes into the past, however, the more inconsistent the evidence becomes. On January 24, 2007, for instance, Dr. Joanne Nguyen reported that Plaintiff walked normally and had good range of motion, despite her complaints of pain rated at 9 out of 10. AR 1487. Less than one month later, on February 18, 2007, Plaintiff had decreased range of motion and was "actually in tears with active range of motion." AR 1478-1479. On April 9, 2007, Dr. Nguyen once again reported that Plaintiff was able to walk "without any difficulties." AR 1438.

Some of this inconsistency appears to persist over time. On September 30, 2010, for example, Dr. Walthour reported that Plaintiff "has no specific complaints of pain" and "walks with a normal heel/toe progressive gait." AR 1871. On July 30, 2012, Dr. Gee reported that Plaintiff had numbness and tingling in both legs, but had a normal gait and stance. AR 382. On January 31, 2012, however, Dr. Gesson reported that Plaintiff was showing "pain with walking, bending, [and] flexing." AR 623. The same was true at Plaintiff's consultative examination with Dr. Sharma on February 11, 2012, when Plaintiff complained of "intermittent burning kind of pain in the lateral aspect of [her] right thigh" and "bilateral knee pain." AR 1542-1543. On December 12, 2012, Plaintiff saw Dr. Gesson, who again reported that Plaintiff was having "difficulty walking, bending, [and] flexing." AR 3484. He also noted decreased straight leg raising. AR 3485. By March 7, 2013, Dr. Gesson reported that Plaintiff "has decreased range of motion of her lower extremities." AR 350.

As with Plaintiff's assistive devices, Plaintiff's leg range of motion and pain appear to have become worse over time. And, as before, there is sufficient consistency in the records to say that Plaintiff was experiencing decreased range of motion and leg pain before March 7, 2013—although March 7 is the first date that Dr. Gesson expressly notes decreased range of motion, he makes numerous comments as to her difficulties with walking, bending, and flexing before that date. Again, however, the record does not support a contention that the onset date should be set as early as December 2011 or June 1, 2006.

### c. **Plaintiff's right shoulder pain.**

Plaintiff's right shoulder pain is not as well documented as her leg pain and use of assistive devices. Plaintiff appears to have exhibited right shoulder pain inconsistently before March 7, 2013. In the consultative examination of February 11, 2012, for example, Dr. Sharma noted that Plaintiff's right shoulder had "[t]enderness to palpation." AR 1546. On that same day, however, Dr. Sharma took an x-ray of Plaintiff's right shoulder and found it "[u]nremarkable." AR 1547. Plaintiff points to other instances in the record that she purports show "neck and shoulder problems" before March 7, 2013, but each of these instances discuss Plaintiff's neck, rather than her right shoulder. AR 446, 533, 560. The Court is assessing whether the ALJ's findings regarding Plaintiff's right shoulder pain, not her neck pain, are consistent with the record—the Court cannot link Plaintiff's right shoulder pain with Plaintiff's neck issues, absent any medical records making that connection.

After March 7, 2013, the record does, in fact, contain more consistent mentions of Plaintiff's right shoulder pain. Plaintiff's right shoulder pain increased in severity as the result of a fall Plaintiff sustained in her kitchen in August 2013. AR 3342 (reporting an "increase in pain since a fall two days ago in her kitchen. Now with increase in usual pain in her R shoulder and R knee"). She also demonstrated a limited range of motion in her upper extremities, beginning in October 2012 (AR 585) and extending into May 2013 (AR 3169), although neither of these records specifically mention right shoulder pain.

Based on the information available in the record, the ALJ had a legitimate basis for determining that Plaintiff's right shoulder pain became a more consistent problem after March 7,

2013.

### d. **Appointment of a medical expert.**

"In the event that the medical evidence is not definite concerning the onset date and medical inferences need to be made, SSR 83-20 requires the ALJ to call upon the services of a medical advisor and to obtain all evidence which is available to make the determination." *Sam v. Astrue*, 550 F.3d 808, 810 (9th Cir. 2008), *quoting DeLorme v. Sullivan*, 824 F.2d 841, 848 (9th Cir. 1991). When "a record is ambiguous as to the onset date of disability, the ALJ must call a medical expert to assist in determining the onset date." *Armstrong v. Comm'r of Soc. Sec. Admin.*, 160 F.3d 587, 590 (9th Cir. 1998

Defendant contends that SSR 83-20 does not apply here because the medical evidence in this case established a "long factual history" and the ALJ did not need to make mere medical inferences with respect to the date of onset. (Defendant's Opposition Brief 11:1-8, ECF No. 15.) Despite the lengthy history of Plaintiff's medical treatment, however, the precise records regarding the onset date of her disabilities (and the conditions that the ALJ discusses) are far from definite. Plaintiff's leg pain, for example, has persisted over a long period of time and appears to have become progressively worse over time. And, as noted above, the records regarding these specific conditions are not particularly lengthy or comprehensive.

While March 7, 2013 is the first date that Dr. Gesson first explicitly noted that Plaintiff had a decreased range of motion in her legs, he had previously noted on several occasions that she was having difficulty bending or flexing her leg. Nothing else about Dr. Gesson's notes about Plaintiff's March 7, 2013 visit is so different from his other notes as to firmly establish that March 7, 2013 is the date Plaintiff first became disabled. Indeed, as Plaintiff notes, Dr. Gesson had repeatedly laced his notes with statements that Plaintiff was unable to work and needed to be on disability before March 7, 2013. AR 558 ("She is obviously incapacitated. It is amazing how this chronic pain syndrome [sic] even gets around."), 584 ("She obviously is incapacitated. She has a chronic pain syndrome and she should be on Social Security disability."), 621 ("She cannot work. She needs to be on social security."). And, as noted above, even the three impairments the ALJ cites as reaching consistency by March 7, 2013 seem to differ—Plaintiff's right shoulder

pain was consistent by 2013, but her leg pain and use of assistive devices appear to be consistent at some point in 2012. The interrelationship between these impairments is also unclear—it may be, for example, that Plaintiff's right shoulder caused significantly more impairment than the other two conditions. Thus, it may be appropriate for the right shoulder impairment to set the pace in establishing a disability onset date. Or it may not be. Given these ambiguities, the Court finds that the ALJ's onset date of March 7, 2013 is inconsistent with the medical evidence of record. Moreover, the ambiguities in the record justify the further development of the record to form a basis for the date of onset.[7] The Court leaves the specific steps needed to develop the record to the judgment of the ALJ. *Herrera*, 379 F.Supp.2d at 1109 ("Here, remand is appropriate so 'the ALJ [can] create a record which forms a basis for th[e] onset date. The ALJ can fulfill this responsibility by calling a medical expert or where medical testimony is unhelpful, explor[e] lay evidence[,] including the testimony of family, friends, or former employers to determine the onset date.'").

Although the Court will remand this case for further findings regarding the onset date of Plaintiff's disability, the Court will briefly discuss the two other issues Plaintiff raises for the ALJ's consideration on remand.

**B. The ALJ's Treatment of Bruce Gesson, M.D.'s Medical Opinion**

*i. Legal standards*

The weight given to medical opinions depends in part on whether they are offered by treating, examining, or non-examining (reviewing) professionals. *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).

An ALJ may reject the *uncontradicted* opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a

---

[7] Because the Court will remand the case to determine a new date of onset, it does not reach the issue of whether or not the ALJ's RFC before the date of onset is supported by substantial evidence.

11

*contradicted* opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. *Lester*, 81 F.3d at 830. While a treating professional's opinion is generally accorded superior weight, if it is contradicted by an examining professional's opinion (when supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995), *citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989). The regulations require the ALJ to weigh the contradicted treating physician opinion, *Edlund v. Massanari*, 253 F.3d 1152 (9th Cir. 2001), but the ALJ need not give it any weight if it is conclusory and supported by minimal clinical findings. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); *see also Magallanes*, 881 F.2d at 751.

### ii. Analysis

On May 14, 2013, Dr. Gesson determined that Plaintiff was limited to less than sedentary exertion and would require more than four absences at work per month. AR 30-31, 3138-3140. The ALJ gave this opinion substantial weight beginning on March 7, 2013. AR 31. Elsewhere in his decision, the ALJ describes Dr. Gesson's numerous statements in 2010, 2011, and 2012 that Plaintiff is disabled and gives those statements little weight. AR 29.

Plaintiff contends that the ALJ incorrectly rejected Dr. Gesson's opinion regarding Plaintiff's disabilities before March 7, 2013. Specifically, Plaintiff argues that it makes little sense to treat Dr. Gesson's opinion differently before and after March 7, 2013; nothing in the record changed with respect to any of the tests performed or diagnoses received on that date. Plaintiff confines her argument to the apparent contradiction in dividing Dr. Gesson's opinions as the ALJ did.[8]

Defendant responds that Dr. Gesson's opinion is inconsistent with the pre-March 7, 2013 record because Plaintiff's daily activities were greater than would be expected. Defendant also points out several instances in the record that indicate that Plaintiff's symptoms were less than severe before March 7, 2013—for example, she was walking normally in 2009 and had several

---

[8] Plaintiff does not challenge the specific reasons the ALJ offered for rejecting Dr. Gesson's pre-March 7, 2013 opinion and the Court declines to consider their sufficiency *sua sponte*.

12

normal findings between December 2011 and March 7, 2013.

As an initial matter, the Court observes that the ALJ's treatment of Dr. Gesson appears to be characterizing different opinions that were offered at different times. When discussing Dr. Gesson's pre-March 7, 2013 opinion(s), the ALJ appears to be referring to Dr. Gesson's multiple statements in the record that Plaintiff was disabled and should qualify for some form of disability benefits. AR 29 ("Bruce H. Gesson, M.D., who has treated the claimant since 2007, stated on multiple occasions in 2010, 2011, and 2012 that the claimant was disabled (Exhibits 1F, 9F, 12F, and 32F). This opinion is given little weight . . ."). When discussing Dr. Gesson's post-March 7, 2013 opinion, on the other hand, the ALJ refers to a specific source statement form that Dr. Gesson filled out in response to a request from Plaintiff's attorney. AR 30-31 ("Dr. Gesson, who has treated the claimant since 2007, also stated on May 14, 2013 that the claimant was limited to less than sedentary exertion and was expected to have more than 4 absences at work per month (Exhibit 34F)."). The source statement made specific findings about Plaintiff's functional limitations, such as how much she could lift or carry. AR 3138. It did not, however, ask Dr. Gesson to opine on how long these limitations had existed.[9]

It thus does not strike the Court as inherently contradictory for the ALJ to give substantial weight to one part of Dr. Gesson's opinion (*e.g.*, the part that described Plaintiff's specific limitations), but little weight to another part of Dr. Gesson's opinion (*e.g.*, the part that simply described Plaintiff as "disabled"). *Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989) ("The treating physician's opinion is given that deference because 'he is employed to cure and has a greater opportunity to know and observe the patient as an individual.' However, the treating physician's opinion on the ultimate issue of disability is not necessarily conclusive."). This is especially so when the later opinion is also distinguishable from the earlier opinions by its specificity—it is more credible for a physician to describe a plaintiff's specific impairments than to merely state that a plaintiff should qualify for disability benefits. The fact that the later opinion

---

[9] Although the form asks a question aimed at the duration of Plaintiff's condition ("In your opinion, when (approximate date) did the patient's current diagnoses cause any functional limitations?"), it does not ask how long Plaintiff had been impaired at the level described in the form. AR 3140. Rather, the question posed asks only when Plaintiff had first experienced *any* level of functional limitations—even a non-disabling functional limitation would lead to an affirmative answer.

is more recent is relevant, as well. As noted above, Dr. Gesson appears to have maintained a consistent opinion over time, but other physicians within the record have offered different opinions over time. It is not unreasonable for the ALJ to believe that the rest of the record eventually became consistent with Dr. Gesson's opinion over time and only credit the portions of his opinion that are consistent with the rest of the record. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). The decision to consider Dr. Gesson's opinions separately (and provide them different weights) did not constitute clear legal error and there is ample justification in the record to do so.[10]

### C. The ALJ's Evaluation of Plaintiff's Credibility

#### *i. Legal standards*

To evaluate the credibility of a claimant's testimony regarding subjective complaints of pain and other symptoms, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id*. The claimant is not required to show that the impairment "could reasonably be expected to cause the *severity* of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id.* (emphasis added). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony regarding the severity of the symptoms for "specific, clear and convincing reasons" that are supported by substantial evidence. *Id*.

> An ALJ can consider a variety of factors in assessing a claimant's credibility, including:
>
> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

---

[10] The Court notes, however, that even if the ALJ was justified in treating Dr. Gesson's opinions as separate and distinguishable, not all of the ALJ's justifications for rejecting Dr. Gesson's earlier opinion appear to be supported by substantial evidence. As noted below, for example, Plaintiff's daily activities appear to be substantially more limited than the ALJ found. On remand, the ALJ may wish to revisit this reasoning.

*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citations and internal quotation marks omitted).

Other factors can include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). An ALJ can only rely on an inconsistency between a claimant's testimony and the objective medical evidence to reject that testimony where the ALJ specifies which "complaints are contradicted by what clinical observations." *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1999). An ALJ properly discounts credibility if she makes specific credibility findings that are properly supported by the record and sufficiently specific to ensure a reviewing court that she did not "arbitrarily discredit" the testimony. *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991).

### ii. Analysis

The ALJ's decision questions Plaintiff's credibility with respect to the severity of her symptoms. AR 27. In particular, the ALJ found that:

> The claimant described daily activities that were not limited to the extent one would expect, given the complaint of disabling symptoms and limitations. Despite her physical impairments, the claimant was essentially independent in self-care and could prepare simple meals, do laundry, water plants, and shop for groceries.

AR 28. The ALJ is thus required to provide "specific, clear and convincing reasons" for finding Plaintiff not credible. *Vasquez*, 572 F.3d at 591.

Plaintiff challenges the ALJ's findings with respect to Plaintiff's daily activities, saying that each of the specific daily activities noted by the ALJ was only accomplished with significant accommodations. While it is true that Plaintiff takes showers, for example, she limits herself to shorter showers and requires someone to be nearby in case she falls. AR 259. Defendant argues that even if Plaintiff's daily activities did not provide enough reason to discount her credibility, Plaintiff's testimony was inconsistent with the medical evidence in the record. Defendant also reiterates the ALJ's reasoning regarding Plaintiff's daily activities.

A plaintiff's daily activities or inconsistencies in testimony can constitute a reason to find that she lacks credibility. *Tommasetti*, 533 F.3d at 1039. The record does, however, substantiate

Plaintiff's argument that each of the activities cited by the ALJ was performed only with significant caveats. While Plaintiff can "prepare" simple meals, for example, she also states that her meal preparation generally entails "warm[ing] up stuff" that has been pre-made. AR 259, 334. She is capable of shopping for groceries, but she limits any trips to 30 minutes or less and does not venture out alone. AR 260, 290, 335. She is capable of showering, but sometimes falls out of the shower and only showers once or twice a week. AR 288, 333. All of these accommodations undercut the finding that Plaintiff lacks credibility merely because of her daily activities.

On remand, the ALJ may wish to re-examine his reasoning in finding Plaintiff not credible. As Defendant notes, the ALJ has cited other reasons for rejecting Plaintiff's testimony—reasons which have not been challenged by Plaintiff. The ALJ also found, for instance, that Plaintiff's testimony is not supported by the medical evidence, a finding that, if true, could call Plaintiff's credibility into question. Thus, even if the ALJ erred in relying on Plaintiff's daily activities to find her not credible, such reliance may be harmless error. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ("an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination'"). The Court notes, however, that an ALJ may not find a plaintiff not credible ***solely*** because of a lack of corroborating evidence in the record. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) ("an adjudicator may not reject a claimant's subjective complaints based solely on the lack of objective medical evidence to fully corroborate the alleged severity of pain"). Thus, the ALJ may wish to review the record and further articulate his reasoning with respect to Plaintiff's credibility on remand.

## VI.   CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence in the record or free of clear legal error. Accordingly, this Court GRANTS Plaintiff's appeal from the administrative decision of the Commissioner of Social Security and the case is REMANDED to the Social Security Administration. On remand, the Social Security Administration shall further consider and develop the record with respect to the onset date of Plaintiff's disability, consistent with this order. The Clerk of the Court is DIRECTED to enter

judgment in favor of Plaintiff Susan Rae Wares and against Defendant Carolyn W. Colvin, Commissioner of Social Security.

IT IS SO ORDERED.

Dated: **September 15, 2016**          /s/ Erica P. Grosjean
                                        UNITED STATES MAGISTRATE JUDGE